## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

ROBIN BARNEY,                              )
                                           )
      Plaintiff,                    )
                                           )
      v.                            )      Case No. 1:19-cv-1947
                                           )
ZIMMER BIOMET HOLDINGS, INC.,              )
                                           )
      Defendant.                    )
                                           )

## NOTICE OF REMOVAL

Defendant Zimmer Biomet, Inc. ("Zimmer Biomet"), by its attorneys and pursuant to 28 U.S.C. §§ 1441(a), (b), and 1446, hereby removes this action from Marion Superior Court, Civil Division, Indiana to the U.S. District Court for the Southern District of Indiana. This action may be removed because this Court has original jurisdiction over the breach of contract claim in Plaintiff Robin Barney's Complaint pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e), as it is completely preempted by Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a). Because the Court has jurisdiction over that claim, the Court has supplemental jurisdiction over her Indiana common law wrongful constructive discharge claim pursuant to 28 U.S.C. § 1367. Therefore, this Court has jurisdiction to hear her claims. In support of removal, Zimmer Biomet states as follows:

### PROCEDURAL REQUIREMENTS

1. On May 2, 2019, Plaintiff filed a two-count Complaint against Zimmer Biomet in Marion Superior Court, Civil Division, Indiana, alleging an Indiana state-law claim for breach of

contract and an Indiana common law claim for wrongful constructive discharge.  *See* Plaintiff's

Complaint, with Ex. A, collectively attached hereto as Ex. 1.[1]

2.      Zimmer Biomet's notice of removal is timely pursuant to 28 U.S.C. § 1446(b)

because it is being filed within 30 days of the date on which Zimmer Biomet was served with the

Summons and the Complaint (May 7, 2019).  *See* Ex. 1.

3.      Pursuant to 28 U.S.C. § 1446(d), Zimmer Biomet is concurrently sending a copy of

this notice of removal to Marion Superior Court, Civil Division, Indiana.[2]

---

[1] This is Plaintiff's second action, and sixth attempt to plead her breach of contract and wrongful constructive discharge claims.  Plaintiff initially filed an action in the United States District Court for the Northern District of Indiana, South Bend Division, Case No. 3:17-cv-616, on August 11, 2017 ("Federal Action").  She ultimately brought claims under the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the same state law breach of contract claim regarding her the 2008 Employment Agreement and Biomet CIC, another breach of contract claim related to Zimmer Biomet's Stock Incentive Plan, and the same wrongful constructive discharge claim.  *See* Federal Action Dkt. No. 1; Federal Action Dkt. No. 16; Compl. ¶¶ 4-6.  After Zimmer Biomet moved to dismiss her claims in their entirety, Plaintiff filed a Third Amended Complaint ("TAC") on November 9, 2017.  Federal Action Dkt. No. 27.  On November 22, 2017, Zimmer Biomet filed a Partial Motion to Dismiss Counts III, IV, and V of Plaintiff's TAC, pursuant to Rule 12(b)(6).  Federal Action Dkt. No. 30.  On November 26, 2018, the Court granted Zimmer Biomet's Motion to Dismiss, dismissing Counts III (Breach of Employment Agreement) and V (Wrongful Constructive Discharge) without prejudice—the same claims alleged herein—and  Count IV (Breach of Stock Incentive Plan), with prejudice.  Federal Action Dkt. No. 67.  After filing a motion for leave to file a Fourth Amended Complaint (Dkt. No. 69), the Court issued an Order granting in part, and denying in part, Plaintiff's Motion for Leave to Amend, preventing Plaintiff from refiling her doomed wrongful constructive discharge claim.  Federal Action Dkt. No. 80.  Plaintiff filed an Objection to that Order on April 18, 2019 (Federal Action Dkt. No. 82) and subsequently withdrew her objection on April 29, 2019.  Federal Action Dkt. No. 83.  In her notice withdrawing her objections, Plaintiff noted she "has elected to proceed in this case with the Third Amended Complaint as the operative Complaint" and "will continue to pursue her federal discrimination claims under Title VII (Counts I and II) in this [C]ourt with the Third Amended Complaint as the operative Complaint."  Federal Action Dkt. No. 83 at ¶¶ 9-10.  In a blatant attempt at forum-shopping, Plaintiff's state court Complaint here was filed shortly thereafter.

[2] Immediately after removal, Zimmer Biomet intends to file a motion to transfer this case to the Northern District of Indiana to be consolidated with the long-pending Federal Action Plaintiff filed against Zimmer Biomet pending before Judge DeGuilio and Magistrate Judge Gotsch, and in which she first asserted these very claims. *See supra,* note 1.

(Footnote Continued)

**BACKGROUND AND SUMMARY OF PLAINTIFF'S CLAIMS**[3]

4.       Plaintiff is a former Zimmer Biomet executive who seeks change in control severance benefits under an employee benefit plan that was memorialized in Biomet Inc.'s ("Biomet") Employment Agreement ("2008 Employment Agreement"), which contained the Biomet Change in Control severance agreement (the "Biomet CIC"). *See* Compl. Exhibit A. Plaintiff began her employment with Biomet, Inc. on September 2, 2008, when she entered into the Biomet CIC with Biomet.  Compl. ¶¶ 9-10.[4]

5.       The Biomet CIC, as incorporated in the 2008 Employment Agreement, is an unfunded employee benefit plan that was made available to a select group of high-level Biomet executives.  Compl. Ex A.; Ex. 2, LVB Acquisition, Inc., Form 425 (March 6, 2015); Ex. 3, Declaration of Heather Kidwell ("Kidwell Decl.") ¶ 4.[5]  As of October 16, 2014, Plaintiff was one of no more than 14 Biomet executives who participated in the Biomet CIC.  Ex. 2, LVB Acquisition, Inc., Form 425 (March 6, 2015); Ex. 3, Kidwell Decl. ¶ 8.

6.       The benefits provided under the Biomet CIC are governed by the terms of the particular agreement provided to each eligible executive.  To receive severance payments and

---

[3] By filing this notice of removal, Zimmer Biomet is not waiving, and expressly reserves, its right to contest the sufficiency of Plaintiff's Complaint.

[4] The 2008 Employment Agreement and Biomet CIC was amended on December 31, 2008 to amend the language in Paragraph 9(e)(i) regarding Treasury Regulation 1.409A-3(i)(5).  Plaintiff executed the amendment.  Compl. Ex. A, First Amendment to Employment Agreement.

[5] The Court can consider the documents attached to this notice of removal but not attached to Plaintiff's Complaint, because they are central to the question of subject matter jurisdiction and are either referenced in Plaintiff's Complaint or are essential to her claims.  *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012) (collecting cases); *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (explaining that a "district court may properly look beyond the jurisdictional allegations of the Complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists") (internal quotation marks and citations omitted).

benefits under the Biomet CIC, the executive must sign a "Release of All Claims," which is attached to the 2008 Employment Agreement as Exhibit A.  Ex. 3, Kidwell Decl. ¶ 5.

7.      On October 16, 2014, Zimmer Holdings, Inc. ("Zimmer") offered Plaintiff the position of Senior Vice President, Global Operations and Logistics of Zimmer Biomet, upon the close of a merger between Zimmer and Biomet ("2014 Agreement").  Plaintiff executed the 2014 Agreement on October 21, 2014.  Ex. 3, Kidwell Decl. ¶ 7.

8.      On June 24, 2015, Zimmer completed its acquisition of Biomet pursuant to an agreement and plan of merger dated April 24, 2014 ("Merger Agreement") between Zimmer, Owl Merger Sub, Inc., an indirect wholly owned subsidiary of Zimmer ("Merger Sub"), and LVB Acquisition, Inc. ("LVB"), the parent company of Biomet.  Pursuant to the Merger Agreement, on June 24, 2015, Merger Sub merged into LVB and LVB and Biomet became indirect wholly-owned subsidiaries of Zimmer, and Zimmer changed its name to Zimmer Biomet.   Zimmer paid approximately $11.17 billion in cash and issued approximately 32.7 million shares of its common stock in connection with the merger, as detailed in public SEC filings.  Ex. 2, LVB Acquisition, Inc., Form 425 (March 6, 2015); Ex. 3, Kidwell Decl. ¶ 9.

9.      Following the merger, Plaintiff became the Senior Vice President of Global Operations and Logistics at Zimmer Biomet.  Compl. ¶¶ 11-12.

10.     The benefits provided under the Biomet CIC are governed by the Biomet CIC that was provided to each eligible executive.  Ex. 3, Kidwell Decl. ¶ 5.  Plaintiff's Biomet CIC provides that if her employment terminates under certain conditions, she is eligible for a "Change of Control Severance Benefit," which includes as separation payment in:

> an amount equal to (A) 2 times the Executive's Base Salary in effect at the Date of Termination plus (B) 2 times the amount equal to the average of (x) the annual incentive bonus earned by the Executive for the fiscal year immediately preceding the fiscal year that contains the Date of Termination and (y) the annual incentive

bonus the Executive would have received for the fiscal year that contains the Date of Termination if her employment had not been terminated, as determined by the Board based on the Company's performance to the Date of Termination extrapolated through the end of such fiscal year[.]

Compl. Ex. A at ¶ 9(e).

11.     Plaintiff's Biomet CIC also provides that, under certain conditions following a Change of Control, she would be entitled to a pro-rated portion of her target annual incentive bonus under the Annual Plan for that fiscal year, as well as up to 24 months of continued healthcare coverage, "Accrued Benefits" as defined in the 2008 Employment Agreement (which included vested compensation and benefit amounts due and owning under any other benefit plans), plus any equity or equity-related awards as governed by those respective plans.  Compl. Ex. A at ¶¶ 9(e), 23.  The particular payments and benefits available under the Biomet CIC to each eligible executive vary depending on the executive's employment tier.  Ex. 2, LVB Acquisition, Inc., Form 425 (March 6, 2015); Ex. 3, Kidwell Decl. ¶ 5.

12.     Plaintiff's separation payments are substantially greater if her employment was terminated within the 24 months following a "Change of Control" as defined in Paragraph 23 of the 2008 Employment Agreement.  Compl. Ex. A at ¶ 23; *also, compare* Compl. Ex. A at ¶ 9(e) *with* Compl. Ex. A at ¶ 9(c).

13.     The 2008 Employment Agreement also contains a Confidentiality, Non-Disclosure and Non-Competition Agreement ("Confidentiality Agreement"), which places certain obligations on Plaintiff to not disclose, solicit, or compete with Biomet.  Compl. Ex. A at ¶ 7.

14.     For the Biomet CIC to become effective, the executive must sign a "Release of All Claims," which is attached to the 2008 Employment Agreement as Exhibit A.  Separation payments and benefits are conditioned on the execution of a Release within 21 days of receiving

said release following a termination of employment and the Plaintiff's compliance with the provisions in the Confidentiality Agreement.  Compl. Ex. A at ¶ 9(h).

15.     The Biomet CIC requires ongoing administration to the extent that determinations must be made at different times about eligibility for benefits, the benefits payable, and the implementation of the terms of the plan as embodied in the Biomet CIC.  Ex. 3, Kidwell Decl. ¶ 6.

16.     On October 28, 2016, Plaintiff sent to Zimmer an e-mail stating that she will resign from Zimmer Biomet, effective November 11, 2016.  Compl. ¶ 51.  Plaintiff's employment with Zimmer Biomet ended on November 11, 2016.  Compl. ¶ 53.  Plaintiff did not execute a release. Compl. ¶ 60; Ex. 3, Kidwell Decl. ¶ 10.

17.      Plaintiff alleges in her Complaint that she was entitled to a "substantial payout" because she was "terminated by the company without 'Cause'" or terminated "her own employment for 'Good Reason' . . . within two years of the June 24, 2015, change in control event at Biomet."  Compl. ¶¶ 56; Compl. ¶¶ 56-61.   In sum, Plaintiff claims that she is entitled to substantial additional monies  for separation payments under the Biomet CIC—and that, because Zimmer Biomet did not pay her benefits pursuant to the Biomet CIC, Zimmer Biomet breached the 2008 Employment Agreement.  Compl. ¶¶ 62-71; Ex. 2, LVB Acquisition, Inc., Form 425 (March 6, 2015).

18.     Plaintiff has cast her claim for Biomet CIC benefits as a claim for breach of contract.  However, as set forth below, Plaintiff's claim is governed exclusively by the remedial scheme provided under Section 502(a) of ERISA, 29 U.S.C. § 1132(a), and is therefore properly removed to federal court.

## ANALYSIS

19.     The federal removal statute provides as follows:

(a) Generally. Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Federal district courts have "original jurisdiction" for all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 502(e) of ERISA, 29 U.S.C. § 1132(e), provides federal courts with jurisdiction to hear actions arising under the ERISA statute.

20.     29 U.S.C. § 1367 provides federal courts "in any civil action of which the district courts have original jurisdiction, . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"

## I.     State-Law Claims That Are Completely Preempted By ERISA Satisfy The Standard For Removal And Federal Court Jurisdiction.

21.     The "well-pleaded Complaint rule" generally requires federal question jurisdiction to appear on the face of a plaintiff's Complaint for jurisdiction in federal court to attach. *See Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citations omitted).  There is an exception to that rule, however; the complete preemption doctrine "confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008).  Thus, "when a federal statute wholly displaces the state-law cause of action through complete pre-emption, the state claim can be

7

removed" to federal court. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (citation and internal quotation marks omitted).

22.     Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides:

A civil action may be brought --

(1)     by a participant or beneficiary -- (A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

29 U.S.C. § 1132(a)(1)(B).

23.     The Supreme Court and Seventh Circuit have uniformly held that the "ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law Complaint into one stating a federal claim for purposes of the well-pleaded Complaint rule.'" *Franciscan Skemp Healthcare*, 538 F.3d at 596 (quoting *Davila*, 542 U.S. at 209). Accordingly, if a plaintiff's state-law claim is within the scope of Section 502(a) of ERISA, 29 U.S.C. § 1132(a), that claim is completely preempted and, therefore, may be removed to federal court. *See Davila*, 542 U.S. at 209 (quoting *Taylor*, 481 U.S. at 66). In this regard, "the preemptive force of ERISA is so powerful that it converts 'a state claim into an action arising under federal law,' even if the plaintiff does not want relief under ERISA." *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (quoting *Taylor*, 481 U.S. at 64); *Sharp v. Navistar Int'l Corp.*, No. 15-cv-00413, 2017 WL 4340172, at *2 (7th Cir. Sept. 30, 2017) (same).

**II.     The Contract Claim in Plaintiff's Complaint Is Completely Preempted By Section 502(a) of ERISA, 29 U.S.C. § 1132(a).**

24.     Following the Supreme Court's guidance in *Davila*, the Seventh Circuit has adopted a two-part analysis to determine when a claim has been completely preempted by ERISA.

Case 1:19-cv-01947-JPH-DML   Document 1   Filed 05/14/19   Page 9 of 16 PageID #: 9

*See Franciscan Skemp Healthcare*, 538 F.3d at 597. The first inquiry is whether "an individual, at some point in time, could have brought his claim under ERISA § 502[a]," and the second inquiry is whether "there is an independent legal duty that is implicated by a defendant's actions." *Id.* (quoting *Davila*, 542 U.S. at 210). Each of those factors demonstrates that Plaintiff's claim is completely preempted by ERISA, and the Complaint is properly removed to this Court.

**A.     Plaintiff Could Have Brought His Claim Under ERISA Section 502(a).**

**1.     The Biomet CIC Is An Employee Benefit Plan Within The Scope Of ERISA.**

25.     An employee benefit plan under ERISA can include severance payments such as those provided under the Biomet CIC. *See Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 631 (7th Cir. 2001) (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 7 n.5 (1987)). Indeed, the Biomet CIC is similar to other severance agreements for top executives[6] that the Seventh Circuit has found to qualify as ERISA plans. *See, e.g., Sharp v. Navistar Int'l Corp.*, No. 15-cv-00413, 2017 WL

---

[6] Plans like the Biomet CIC are known as "top-hat" plans. Top-hat plans are a special category of unfunded benefit plans created under ERISA to provide benefits to a small, select group of high-level employees. *See* 29 U.S.C. §§ 1051(a), 1081(3), and 1101(a)(1). Top-hat plans are exempt from most of ERISA's substantive requirements, including ERISA's requirement that a plan be established and maintained pursuant to a written instrument, *see* 29 U.S.C. § 1101(a)(1), but they remain subject to ERISA's civil enforcement provisions. *See, e.g., Olander v. Bucyrus–Erie Co.*, 187 F.3d 599, 604 (7th Cir. 1999); *Pane v. RCA Corp.*, 868 F.2d 631, 637 (3d Cir. 1989).

Top-hat status aside, the Biomet CIC can be considered an ERISA plan even if Plaintiff were the only participant. For example, in *Cvelbar v. CBI Illinois Inc.,* 106 F.3d 1368 (7th Cir. 1997), *abrogated on other grounds by Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Rabine*, 161 F.3d 427, 430 (7th Cir. 1998), the Seventh Circuit considered a similar agreement between an executive and his employer that was designed to retain top management during periods of economic uncertainty and provide for post-termination separation payments and other benefits. The court noted that the employer had signed similar contracts with four other top employees, but concluded that "[e]ven if we must characterize the arrangement before us as a one-person plan, we have no difficulty in holding that it is possible for a one-person arrangement to qualify as an ERISA plan." 106 F.3d at 1376. *See also Collins v. Ralston Purina Co. and Golden Cat Corp.*, 147 F.3d 592, 597 (7th Cir. 1998) ("we need not determine exactly how many [management retention] agreements (similar to Collins') Golden Cat executed with its managers" in deciding that plaintiff's agreement was covered by ERISA).

4340172 (7th Cir. Sept. 30, 2017) (ERISA applied to change in control agreement that provided severance payments and benefits following a change in control); *Roberston v. Rubbermaid, Inc.*, No. IP99-0307-C-M/S, 2000 WL 33309371 (7th Cir. Mar. 31, 2000) (ERISA applied to Change in Control Employment Agreement held by plaintiff and other "key" executives); *Bowles*, 266 F.3d at 626 (ERISA applied to severance plan that was designed "to protect certain key managers from the effects of an actual or possible Change in Control"); *Collins*, 147 F.3d at 594 ("retention agreement" with upper-level managers that provided severance benefits if a manager was terminated by the employer's prospective acquirer was subject to ERISA); *Cvelbar*, 106 F.3d at 1370-71, 1374-78 ("Employer-Employee Agreement" that provided for severance benefits in the event of termination was an ERISA plan).

26.     In determining whether a severance plan falls within ERISA's coverage, the key inquiry is "whether the plan requires an ongoing administrative program to meet the employer's obligations." *Bowles*, 266 F.3d at 631 (citing *Fort Halifax*, 482 U.S. at 11-12; additional citations omitted).[7]  A severance plan requires an ongoing administrative program, and thus falls within the purview of ERISA, when the plan "places 'periodic demands on [an employer's] assets that create a need for financial coordination and control.'"  *Bowles*, 266 F.3d at 631. (quoting *Fort Halifax*, 482 U.S. at 12; citing *Collins*, 147 F.3d at 596).  The "need to create an administrative scheme may arise where the employer, to determine the employee's eligibility for and the level of benefits, must analyze each employee's particular circumstances in light of the appropriate criteria."  *Sharp*

---

[7] Whether Biomet or Zimmer Biomet characterized the CIC Agreement as an ERISA plan is of no moment. *Sharp v. Navistar Int'l Corp.*, No. 15-cv-00413, 2017 WL 4340172, at *3 (7th Cir. Sept. 30, 2017) ("[F]ailure to explicitly characterize the [agreement] as an ERISA plan does not have much bearing on the issue – the actual characteristics of the plan, not any party's characterization, determines whether it is an ERISA plan.")

*v. Navistar Int'l Corp.*, No. 15-cv-00413, 2017 WL 4340172, at *3 (7th Cir. Sept. 30, 2017). Such is the case here.

27.     Under the Biomet CIC, Zimmer Biomet cannot prepare for one exclusive situation that would trigger its severance liability. The "triggering" events for severance benefits are (a) the date of that particular executive's termination of employment, which is not connected to any specific situation or circumstance and will necessarily vary from one Biomet CIC executive to the next; (b) whether a change in control as defined in the Biomet CIC in fact occurred; and (c) whether that date of separation was within a specified period of time in relationship to a change of control in the ownership. These factors, and the corresponding "potential protracted liability" and "[p]rolonged decision-making concerning benefits," are precisely what led the Seventh Circuit in *Bowles* to conclude that the severance agreement at issue was covered by ERISA. 266 F.3d at 631-32 (citations omitted); *see also Collins*, 147 F.3d at 597 ("It is unreasonable to conclude that [the employer] could face such potential protracted liability without the advantage of an ongoing administrative scheme to satisfy its obligations.").

28.     In addition, the Biomet CIC requires Zimmer Biomet to exercise discretion in determining exactly what its obligations to Biomet CIC executives are in the event they terminate employment. *See Collins*, 147 F.3d at 597 (finding that separation agreement at issue required an ongoing administrative scheme, and was covered by ERISA, where it required the employer to "exercise discretion on an ongoing basis"). Zimmer Biomet must determine whether the executive resigned for "Good Reason" following a "Change of Control," or whether the executive was terminated for or without "Cause" or otherwise merely resigned. Compl. Ex. A ¶¶ 9(e), 23. The executive's severance payment is directly tied to that determination, which requires Zimmer Biomet to evaluate various factors such as whether there has been a "material diminution" of the

executive's "duties or responsibilities," Compl. Ex. A at ¶ 23; whether there has been a decrease in base salary or bonus apart from a decrease faced by a similarly situated "class of employees," Compl. Ex. A. ¶ 23; or whether the executive has been relocated more than 50 miles from the executive's work location.  Compl. Ex. A. ¶ 23.  These are the same types of determinations that have led the Seventh Circuit to conclude that a severance plan requires an ongoing administrative program.  *See Sharp,* 2017 WL 4340172 at *4 (employer had to "make determinations such as whether [Plaintiff] (and other executives) suffered a 'material diminution' of authority, duties, or responsibilities, and be prepared to potentially face multiple demands by executives who felt they had suffered such a 'constructive termination.'"); *Bowl*es, 266 F.3d at 631-32 (employer had to monitor the conditions of executives' conditions of employment, including a potential change in control); *Collins*, 147 F.3d at 596 (explaining that the plan required the employer to evaluate whether the employees' job responsibilities had been "substantially reduced," a standard it described as "hardly an easily discernible one").  *Cvelbar*, 106 F.3d at 1377-78 (among other things, employer had to determine the reason for an executive's termination in order to determine if the executive would be eligible for benefits).

29.     Further, the amount of separation payments available under the Biomet CIC is based, in part, on the particular executive's salary and personal compensation package, as well as whether a Change of Control has occurred—as defined in both Paragraphs 9 and 23—and whether one occurred in the 24-month period preceding the executive's termination.  Ex. 3, Kidwell Decl. ¶ 5; Compl. Ex. A at ¶¶ 9, 23).  Zimmer Biomet thus has an ongoing obligation to monitor its ability to pay various compensation amounts at any given point in time should a Biomet CIC executive terminate employment.  *See Collins*, 147 F.3d at 595-96 ("The individual retention

agreements required the company to budget for the prospect of paying out disbursements of varying amounts to its managers and at varying times.").

30.    In addition, to individual separation payments, the Biomet CIC requires Zimmer Biomet to assume an ongoing responsibility to pay other benefits (such as health care coverage) even after the executive's employment is terminated.  *See Cvelbar*, 106 F.3d at 1376-77 (quoting *Fort Halifax*, 482 U.S. at 12); Compl. Ex. A at ¶ 9 (requiring payment of health care coverage for up to 24 months and Accrued Benefits).

31.    Moreover, like the agreement in *Robertson,* the Biomet CIC "contains a non-compete clause" which prevents Plaintiff from working for a competitor under defined circumstances, soliciting employees, and disclosing confidential information.  Compl Ex. A at ¶7.  This provision "imposes a duty on [Zimmer Biomet] to monitor the business activity of the employees" who have Biomet CIC, especially when Plaintiff "is a key executive with access to company secrets and confidential information."  *Robertson¸* 2000 WL 33309371, at *5.

32.    In light of this ongoing administrative scheme, "[I]t is unclear why [Zimmer Biomet] would have to undertake determinations as to whether an executive . . . was terminated following a 'change in control' outside of the severance context."  *Sharp v. Navistar Int'l Corp.*, No. 15-cv-00413, 2017 WL 4340172, at *4 (7th Cir. Sept. 30, 2017).

33.    There can be no question that the Biomet CIC is an ERISA plan.[8]

---

[8] In *Cvelbar*, the court also looked to whether a court could determine "from the surrounding circumstances" whether "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits" under the plan.  *Cvelbar,* 106 F.3d at 1378 (quoting *Diak v. Dwyer, Costello & Knox, P.C.,* 33 F.3d 809, 812 (7th Cir. 1994) (internal quotation marks omitted).  The Biomet CIC meets these criteria as well.  Plaintiff signed the Biomet CIC and is thus the intended beneficiary. Compl. Ex. A.  The same is true for the other executives who have signed the Biomet CIC.  The benefits of the Biomet CIC, as well as the procedures for receiving the benefits, are explicitly stated in Paragraph 9 of the Biomet CIC, which is titled "Termination by the Company Other Than For Cause, Death or Disability, or by the Executive for Good Reason, Following a Change of Control."    Compl. Ex. A at ¶9(e).  The
(Footnote Continued)

## 2. Plaintiff's Cause Of Action Falls Within Section 502(a)(1)(B) Of ERISA.

34.    Plaintiff's Complaint is also completely preempted by ERISA because she could have brought her breach of contract claim under ERISA.  Section 502(a)(1)(B) of ERISA allows a plan participant or beneficiary to sue "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Plaintiff characterizes the severance payment she seeks as severance payments and benefits pursuant to the Biomet CIC.  Compl. ¶¶ 62-71.  Whatever terminology she uses, she is clearly a Biomet CIC plan "participant,"[9] and her claim for benefits under the terms of the Biomet CIC—an ERISA plan—is a claim she could have brought under Section 502(a)(1)(B) of ERISA.  *See, e.g., Vanderwiel v. Schawk USA, Inc.*, Case No. 12-cv-4178, 2012 WL 3779040, at *2 (N.D. Ill. Aug. 30, 2012) (holding that state-law claim for additional severance benefits under an ERISA plan was completely preempted by ERISA Section 502(a)(1)(B)).  As such, Plaintiff's state-law claim is completely preempted, and ERISA Section 502(a)(1)(B) is Plaintiff's exclusive avenue to pursue that claim.

## B.   The Only Legal Duties Implicated by the Contract Claim In Plaintiff's Complaint Are Those Arising Out Of The Biomet CIC.

---

sources of financing include Zimmer Biomet's general corporate assets, as well as the existing benefits plans referenced in the CIC Agreement.  Compl. Ex. A. ¶¶ 9, 23.  *See Robertson*, 2000 WL 33309371, at *7 ("[T]he Seventh Circuit [has] explicitly stated 'payment of benefits out of general funds satisfies the requirement of an ascertainable source of funding. . . . [and] where, as in this case, an agreement references the company's existing benefit plans as the source of funding, [funding] is ascertainable because an examination of those plans will reveal the source of funds for such benefits.")

[9] ERISA defines a "participant" in relevant part as "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." 29 U.S.C. § 1002(7). As the Seventh Circuit has explained, ERISA standing "is available to any former employee who has a colorable claim to benefits which the employer promised to provide pursuant to the employment relationship and which a nonfrivolous argument suggests have accrued to the employee's benefit." *Panaras v. Liquid Carbonic Indus., Corp., et al.,* 74 F.3d 786, 791 (7th Cir. 1996) (citations omitted).

14

35.     Plaintiff's Complaint also satisfies the second prong of the *Davila* analysis because "there is no independent legal duty to pay the severance claimed apart from" the Biomet CIC, an ERISA plan. *See Davila,* 542 U.S. at 210. Plaintiff's breach of contract claim is based solely on her alleged entitlement to additional benefits under the Biomet CIC. Compl. ¶¶ 62-71. "In other words, the alleged legal duty owed to [Plaintiff] cannot be decided without reference to plan documents and is not independent of an ERISA eligible plan." *Vanderwiel*, 2012 WL 3779040, at *3. Thus, Plaintiff's claim is completely preempted by ERISA under this factor as well.

**CONCLUSION**

For the foregoing reasons, Plaintiff's state-law claim for breach of contract is completely preempted by ERISA, and this Court has original jurisdiction to consider the case. Because the Court has original jurisdiction, it also has supplemental jurisdiction over the remaining state law claim. Zimmer Biomet has thus properly removed the underlying action to this Court.

DATED: May 14, 2019                    Respectfully submitted,

                                       /s/ *Stephen M. Judge*

                                       Troy S. Brown (*pro hac vice forthcoming*)
                                       Michael L. Banks (*pro hac vice forthcoming*)
                                       Dana E. Becker (*pro hac vice forthcoming*)
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       1701 Market Street
                                       Philadelphia, PA 19103
                                       Tel: (215) 963-5000
                                       troy.brown@morganlewis.com
                                       michael.banks@morganlewis.com
                                       dana.becker@morganlewis.com

                                       Meredith E. Riccio (*pro hac vice*)
                                       MORGAN, LEWIS & BOCKIUS LLP
                                       77 West Wacker Dr.
                                       Chicago, IL 60601-5094
                                       Tel: (312) 324-1130
                                       meredith.riccio@morganlewis.com

                                       John D. Ladue
                                       Stephen M. Judge
                                       SOUTHBANK LEGAL: LADUE | CURRAN | KUEHN
                                       100 E. Wayne St., Suite 300
                                       South Bend, IN 46601
                                       Tel: (574) 968-0760
                                       Fax: (574) 968-0761
                                       jladue@lck-law.com
                                       sjudge@lck-law.com

                                       *Attorneys for the Defendant*
                                       *Zimmer Biomet Holdings, Inc.*